CHRISTOPHER G. PARNALL *vs.* WILLIAM A. PAINE & others.

Norfolk.   March 13, 1911. — May 19, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Conversion.   Stockbrokers.*

At the trial before a judge without a jury of an action, by the customer of a New York firm of stockbrokers against a Boston firm who did business for the New York firm under a contract with them, for conversion of shares of capital stock, a finding of the following facts was warranted from facts agreed upon: The customer on August 19 of a certain year ordered the New York firm to subscribe for the shares, the market for which was in Boston. The New York firm placed the order with the Boston firm and the Boston firm made the subscription for $4,000, paid for the shares in full and charged that amount to the New York firm, and the New York firm, receiving notice of the transaction, balanced their account with their customer by sending him a check for an amount which, with the stock thus subscribed for, was found to be due to him. The New York firm then demanded of the Boston firm that the shares of stock be transferred to their customer. The Boston firm, upon paying for the shares, had received temporary receipts, which later were to be surrendered and exchanged for stock certificates, but such exchange could not be made until September 8. By a custom of brokers, no charge was made for making such exchange. There were two accounts kept between the firms, one of dealings in Boston by the Boston firm for the New York firm and the other of dealings in New York by the New York firm for the Boston firm, and the accounts and the transactions referred to in them were intended to be dealt with independently, the two accounts to be considered together at the close of the transactions between the firms. On August 19 and immediately before and after that date, there was a substantial balance due to the New York firm on the account of the Boston firm's transactions for them. On the account as to the New York firm's transactions for the Boston firm, the New York firm had in their hands a large amount of property of the Boston firm as margins on New York stock transactions. On August 20 the New York firm paid the Boston firm $5,000 on account, which was understood to cover the transactions for the plaintiff. A few days later the New York firm failed and the Boston firm then sold the stock, which had been subscribed for on the plaintiff's behalf, and applied the proceeds toward what was due to them from the New York firm. *Held*, that there was evidence warranting a finding for the plaintiff, because findings were warranted that the defendants sold shares of stock which were fully paid for and belonged to the plaintiff, although there had been no formal transfer thereof to him and regular certificates could not be issued until later.

KNOWLTON, C. J.   This case was heard by a judge * without a jury and there was a finding for the plaintiff upon a count for the conversion of five hundred shares of stock of the North Lake

---

* *Hardy*, J.

Mining Company. It is reported upon the question whether there was any evidence to warrant the finding.

The plaintiff, a resident of Jackson, Michigan, had an account with A. O. Brown and Company, stock brokers, doing business in New York City, upon which there was a substantial balance to his credit. On August 19, 1908, through their branch office in Detroit, Michigan, where he had been accustomed to do business with them, he ordered them to subscribe for five hundred shares of the capital stock of the North Lake Mining Company on his account. There was an arrangement between this firm and the defendants, who were stock brokers in Boston, that the defendants should do all the business of A. O. Brown and Company in Boston, and A. O. Brown and Company should do all the defendants' business in New York. A. O. Brown and Company sent an order to the defendants to make this subscription at the office of the corporation in Boston, and after getting a response that the subscription had been made and that the account of A. O. Brown and Company had been charged $4,000 on account of it, they charged this amount to the plaintiff and credited his account with the five hundred shares of stock, and closed the account by sending him a check for the balance due him. Previously, on the same day, they had sent a telegram to the defendants, which was duly received, but not answered, inquiring whether the $4,000 paid for the stock in full. Later, on the same day, they sent another telegram to the defendants, asking to have the stock transferred to the plaintiff and shipped. The stock was subscribed for at $8 per share and was paid for in full by the defendants, who received temporary receipts for their payment, which were to be surrendered and exchanged for stock certificates; but this exchange could not be made until September 8. Under the custom of brokers, no commission was charged by the defendants for this service.

The findings of the judge were made upon a statement of agreed facts which included long extracts from the book accounts between the parties, from which inferences might be drawn in regard to their course of dealing and the effect of their transactions. Two separate accounts were kept by each party, one relating to the transactions of the defendants in Boston on the order of A. O. Brown and Company, and the other relating to

the transactions of A. O. Brown and Company in New York, on the order of the defendants.

The judge was warranted in finding that these accounts and the transactions referred to in them, were intended to be dealt with independently, as each party would deal with such an account for any other party who was not a broker for whom he was doing business and who had no other account with him. The two accounts were to be considered together at the close of their transactions. The judge might also have found that there was a substantial balance in favor of A. O. Brown and Company on August 19, and immediately before and after that date, upon the account to which this transaction belonged. In the agreement under which the two firms of brokers were acting, there was an arrangement for providing margins as security for liabilities and it was stipulated that payment should be made in cash for purchases of stock at less than $10 per share. On August 20, the day after this order was given, A. O. Brown and Company caused their bankers in Boston to pay the defendants $5,000 on account, and the judge might have found that this payment was understood by the parties as covering the price of this stock. He might have found that the defendants, after the last telegram from A. O. Brown and Company relating to the transaction, and especially after the payment of the $5,000 in cash, were holding this stock as fully paid for and belonging to the plaintiff, although there had been no formal transfer to him and the regular certificates of stock could not be issued until September 8.

The controversy arises from the fact that A. O. Brown and Company failed a few days later, having in their hands a large amount of property that had been advanced by the defendants as margins on their transactions in New York. The defendants then sold the five hundred shares of stock in the North Lake Mining Company and retained the proceeds and applied them in part payment of their claim against A. O. Brown and Company. We are of opinion that there was ample evidence to warrant a finding for the plaintiff.

*Judgment on the finding.*

*F. N. Nay & F. E. Neagle* (of New York), for the plaintiff.
*C. E. Hellier*, (*W. P. Everts* with him,) for the defendants.